**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

**UNITED STATES OF AMERICA**

      **v.**                                        **1:15-cr-00057-LM**

**MUSTAFA HASSAN ARIF**

<u>**SUPERSEDING INDICTMENT**</u>

THE GRAND JURY CHARGES THAT:

<u>General Allegations</u>

At all times material to this Indictment:

1. The United States Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Section 301, <u>et seq</u>. ("FDCA"). One purpose of the FDCA was to ensure that drugs sold for administration to humans in the United States were safe, effective, and bore labeling containing only true and accurate information. The FDA's responsibilities under the FDCA included regulating the manufacture, labeling, and distribution of drugs shipped or received in interstate commerce.

2. Under the FDCA, "drug" meant "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; . . . and . . . articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . " Title 21, United States Code, Section 321(g)(1).

3.  Under the FDCA, a drug was misbranded if its labeling was "false or misleading in any particular."  Title 21, United States Code, Section 352(a).  The FDCA defined "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  Title 21, United States Code, Section 321(m).

4.  Under the FDCA, a drug was a prescription drug if, because of its toxicity or other potentiality for harmful effect, or the methods of its use, or the collateral measures necessary to its use, it was not safe for use except under the supervision of a licensed medical practitioner.  Title 21, United States Code, Section 353(b)(1)(A).

5.  The FDCA prohibited the introduction or delivery for introduction, or causing the introduction or delivery for introduction, into interstate commerce of any drug that was misbranded.  Title 21, United States Code, Section 331(a).

6.  A drug was misbranded if its labeling was false or misleading in any particular.   Title 21, United States Code, Section 352(a).

7.  A drug was also deemed to be misbranded if it was a prescription drug and it was dispensed without the prescription of a licensed medical practitioner.   Title 21, United States Code, Section 353(b)(1).

8.  Beginning as early as January 2007 and continuing until January 2014,the defendant, Mustafa Hassan Arif ("ARIF"), operating from Lahore, Pakistan and elsewhere, devised a scheme to defraud individuals, including individuals in the United States, and to obtain

money by means of materially false and fraudulent pretenses, representations and promises.

9.  In furtherance of the scheme, ARIF caused the creation and maintenance of hundreds of websites that promoted and offered for sale drugs claiming to cure, mitigate, or treat numerous diseases, including, but not limited to Alzheimer's disease, ADHD, various forms of anemia, Bell's palsy, cerebral palsy, emphysema, glaucoma, Guillain-Barre Syndrome, mental retardation, muscular dystrophy, pancreatitis, Parkinson's disease, psoriasis, vertigo, vitiligo, and many others.

10. In furtherance of the scheme, and to induce consumers to purchase the drugs promoted and offered for sale by these websites, ARIF caused these websites to contain materially false, misleading, and fraudulent claims about the drugs.

11. One series of websites created by ARIF operated under the name Oslo Health Solutions. This series of websites consisted of over 300 websites, most of which were registered to Oslo Health Solutions in Norway.  Through these websites, ARIF promoted and offered for sale drugs intended to cure, mitigate, or treat various diseases including Alzheimer's disease, emphysema, glaucoma, and Guillain-Barre Syndrome.  The websites that offered these products for sale claimed that the drugs were clinically proven to cure or treat the particular diseases and that the treatments were "fully guaranteed."  The websites also contained links to clinical research allegedly done on the products.  However, the linked material contained no clinical research and stated, "The unique formulation" of whatever drug being sold "is the result of extensive study and research" and "is clinically proven to

be a safe and effective treatment" for whatever disease the drug was intended to treat and further stated, "Clinical study soon to be posted here."

12. ARIF also created two websites that were nearly identical in appearance to websites in the Oslo Health Solutions series and contained similar links to clinical research allegedly done on the drugs.  These two websites promoted and offered for sale drugs to treat, mitigate, or cure various forms of anemia and vertigo.  The linked clinical research consisted of clinical research papers reporting the result of clinical studies purportedly conducted on the drugs being promoted and sold.  In fact, the research papers were falsified in that the actual clinical research described in the clinical research papers had been conducted on different products than the drugs offered for sale through the websites.

13. The website Vitiligo-tab.net promoted and offered for sale the drug Vitiligo Tab for the treatment of vitiligo.  The website stated that Vitiligo Tab was clinically proven as effective to treat vitiligo, when in fact the research paper referenced on the website and purporting to support the use of Vitiligo Tab for the treatment of vitiligo appears to have been fabricated  based upon research conducted on homeopathic drugs, not Vitiligo Tab..

14. The website Vertigo-tab.net promoted and offered for sale the drug Vertigo Tab for the treatment of Vertigo.  The website stated that Vertigo Tab was clinically proven as effective to treat Vertigo, when in fact the research paper referenced on the website and purporting to support the use of Vertigo Tab for the treatment of vertigo was fabricated, based on research conducted on Vertigoheel and Dimenhydrinate, not Vertigo Tab, and was used without permission.

15. The website Anemia-tab.net promoted and offered for sale the drug Anemia Tab for the treatment of pernicious anemia, sickle cell anemia, iron deficiency anemia, and aplastic anemia.  The website stated that Anemia Tab ""[t]housands of patients have been successfully cured with Anemia Tab over the past many years."  When in fact no one, other than an undercover law enforcement officer, had ever purchased Anemia-tab.and that it is "clinically proven."  And, in fact, the research papers referenced on the website, and purporting to support the use of Anemia Tab for the treatment of anemia, were fabricated, based on research conducted on products called Jubi Formula and African Herbal Formula, not research conducted on Anemia Tab, and were used without permission.

16. Another series of websites was operated by ARIF under the name of Gordon's Herbal Research Center.  This series of websites consisted of over 120 websites, most of which were registered to Gordon's Herbal Research Center or GHRC in Aukland, New Zealand.  Through these websites, ARIF promoted and offered for sale drugs intended to cure, mitigate, or treat various diseases including Attention Deficit Disorder, emphysema, Guillain-Barre syndrome, lichen planus, myasthenia gravis, scleroderma, and Waldenstrom's Macroglobulemia.

17. Most, if not all, websites in the Gordon's Herbal Research Center series contained falsified results of laboratory and clinical studies.  The results were clearly falsified as the exact same results were included for each drug being offered for sale through those websites.  For example, the websites included the purported results of a "preliminary controlled study" of whatever drug was being offered for sale and stated that the study

demonstrated that "72 percent of patients experienced an improvement of 1 or more on the Physician's Global Assessment (PGA);" that 53 percent of users saw a PGA reduction of 2 or more" and that "17 percent saw a reduction of 3 or more."  Of the websites reviewed, the reported results were the same for each drug and disease.

18. One website registered to Gordon's Herbal Research Center was www.burneton.com demonstrated that the websites in this series were virtually identical except for the name of the drug being offered for sale and the disease that the drug was intended to treat.   The website contained several statements where the spaces for filling in the name of the disease were not filled in.  The website stated, "Been suffering from [DISEASE]?  Well, no need to suffer any more.  After eight years of extensive research and development work, we take pride in presenting to you an all-natural product to treat [DISEASE]!"

19. A third series of websites operated by ARIF operated under the name Solutions By Nature.  This series of websites consisted of over 70 websites, most of which were registered to Solutions By Nature in Denmark.  Through websites in this series, ARIF promoted and offered for sale drugs intended to cure, mitigate, or treat various diseases including Guillain-Barre, Bell's Palsy, and emphysema.  The websites reviewed in this series all claimed in clinical trials to provide a complete cure rate in 90% of subjects and that the drug had proven effective for 95% of people.

20. In furtherance of the scheme, customers who purchased drugs from one of the websites operated by ARIF were redirected to the website for CCNow, a company located in Minneapolis, Minnesota, that operated online checkout or "shopping cart" and payment processing services for ARIF.  CCNow processed purchases made through the websites

by collecting payments from the customers and later transferring the proceeds, less

processing fees, from CCNow's bank account in Minnesota to bank accounts in Pakistan

and the United Kingdom held in ARIF's name or the name of MAK International, an

entity owned and operated by ARIF.

21. In furtherance of the scheme, thousands of orders were placed by individuals in the

United States, including from New Hampshire, in interstate commerce, through web

based processes set out above, and in so doing those individuals paid for their orders

using credit cards and PayPal that were processed by CCNow, through electronic

communications in interstate commerce.

22. Specifically included in those orders was an order made by an undercover agent (UCA)

from New Hampshire.  On or about April 14, 2010 the UCA accessed, through interstate

commerce via the Internet from New Hampshire, a web site controlled by ARIF,

www.anemia-tab.net. The UCA was redirected to CCNow's website, which was located

outside of New Hampshire, at which point the UCA placed an order for 120 pills and

paid $89.99 for the order using a Visa card. All said transactions involved in that

purchase involved the use of interstate wire communications from a computer in New

Hampshire to computers outside of New Hampshire.

23. Specifically included in those orders was an order made by a customer from New

Hampshire.  On or about March 1, 2011 the customer accessed, through interstate

commerce via the Internet from New Hampshire, a web site controlled by ARIF,

www.semtical.com. The customer was redirected to CCNow's website, which was

located outside of New Hampshire, at which point the customer placed an order for 100

pills and paid $80.00 for the order via the Internet. All said transactions involved in that purchase involved the use of interstate wire communications from a computer in New Hampshire to computers outside of New Hampshire.

24. From in or about January 2007 until in or about January 2014, sales of drugs through websites operated by ARIF generated gross proceeds of approximately $12 million.

<u>COUNT ONE</u>
(18 U.S.C. §§ 1343 and 2; Wire Fraud and Aiding and Abetting Wire Fraud)

25. Paragraphs 1 through 24 of the General Allegations are incorporated by reference as though re-alleged in their entirety herein.

26. At various times in or about January 2007 through at least in or about January 2014, in the District of New Hampshire and elsewhere, the defendant, ARIF, having devised a scheme to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, including but not limited to wire transfers of proceeds from CCNow to ARIF as set forth below, for the purpose of executing such scheme.

27. On or about each of the dates set forth below, ARIF, for the purpose of executing the scheme described above, caused CCNow to initiate and cause the transmission of wire transfers of money, in interstate and foreign commerce from its bank account in Minnesota to bank accounts controlled by ARIF or by MAK International in Pakistan and the United Kingdom, in the amounts and to the accounts as set out below:

To MCB Bank in Lahore, Pakistan:

| Payment Date (on or about) | Amount | Account Name |
|---|---|---|
| 1/1/2007 | $46,043.93 | MAK International |
| 3/16/2007 | $78,423.66 | MAK International |
| 4/1/2007 | $71,504.85 | MAK International |
| 4/16/2007 | $86,799.08 | MAK International |
| 6/16/2007 | $18,597.94 | MAK International |
| 7/1/2007 | $7,538.36 | MAK International |
| 7/1/2007 | $64,550.03 | MAK International |
| 7/16/2007 | $9,843.78 | MAK International |
| 7/16/2007 | $63,045.97 | MAK International |
| 8/1/2007 | $13,400.37 | MAK International |
| 8/1/2007 | $71,011.13 | MAK International |
| 8/16/2007 | $20,399.20 | MAK International |
| 9/1/2007 | $10,556.45 | MAK International |
| 9/16/2007 | $14,540.51 | MAK International |
| 9/16/2007 | $74,182.33 | MAK International |
| 10/1/2007 | $14,515.14 | MAK International |
| 10/1/2007 | $55,432.58 | MAK International |
| 10/16/2007 | $7,896.35 | MAK International |
| 10/16/2007 | $49,233.74 | MAK International |
| 11/1/2007 | $12,594.37 | MAK International |
| 1/16/2008 | $73,918.65 | MAK International |
| 2/1/2008 | $7,938.88 | MAK International |
| 2/1/2008 | $63,246.76 | MAK International |
| 4/16/2008 | $58,041.74 | MAK International |

| | | |
|---|---|---|
| 5/1/2008 | $40,550.52 | MAK International |
| 5/16/2008 | $39,470.23 | MAK International |
| 6/1/2008 | $42,276.52 | MAK International |
| 6/16/2008 | $35,616.43 | MAK International |
| 7/1/2008 | $40,326.95 | MAK International |
| 7/16/2008 | $39,855.55 | MAK International |
| 8/1/2008 | $36,165.82 | MAK International |
| 8/16/2008 | $29,777.65 | MAK International |
| 9/1/2008 | $34,989.75 | MAK International |
| 9/16/2008 | $37,809.03 | MAK International |
| 9/16/2008 | $59,430.90 | MUSTAFA ARIF |
| 10/1/2008 | $32,506.02 | MAK International |
| 10/1/2008 | $56,373.41 | MAK International |
| 10/16/2008 | $30,782.43 | MAK International |
| 10/16/2008 | $49,419.73 | MAK International |
| 11/1/2008 | $28,980.12 | MAK International |
| 11/1/2008 | $54,325.34 | MAK International |
| 12/16/2008 | $24,242.00 | MAK International |
| 12/16/2008 | $33,356.80 | MAK International |
| 1/1/2009 | $23,459.14 | MAK International |
| 1/1/2009 | $34,271.30 | MAK International |
| 1/16/2009 | $31,042.87 | MAK International |
| 1/16/2009 | $43,690.01 | MAK International |
| 2/1/2009 | $27,946.13 | MAK International |
| 2/1/2009 | $36,889.80 | MAK International |
| 2/16/2009 | $21,985.55 | MAK International |

| | | |
|---|---|---|
| 2/16/2009 | $31,304.89 | MAK International |
| 3/1/2009 | $25,454.48 | MAK International |
| 3/1/2009 | $34,599.86 | MAK International |
| 3/16/2009 | $23,665.17 | MAK International |
| 3/16/2009 | $35,921.39 | MAK International |
| 4/1/2009 | $27,887.79 | MAK International |
| 4/1/2009 | $38,149.48 | MAK International |
| 4/16/2009 | $29,658.64 | MAK International |
| 4/16/2009 | $36,475.60 | MAK International |
| 7/1/2009 | $33,385.36 | MAK International |
| 7/16/2009 | $26,169.35 | MAK International |
| 8/1/2009 | $33,663.99 | MAK International |
| 8/16/2009 | $29,512.70 | MAK International |
| 9/1/2009 | $37,490.68 | MAK International |
| 9/1/2009 | $95,113.57 | MAK International |
| 9/16/2009 | $89,409.90 | MAK International |
| 10/1/2009 | $116,143.98 | MAK International |
| 10/16/2009 | $23,217.78 | MAK International |
| 11/1/2009 | $28,094.41 | MAK International |
| 11/1/2009 | $104,084.67 | MAK International |
| 11/16/2009 | $22,507.99 | MAK International |
| 12/1/2009 | $21,344.15 | MAK International |
| 12/1/2009 | $77,590.55 | MAK International |
| 12/16/2009 | $29,859.30 | MAK International |
| 1/1/2010 | $18,796.10 | MAK International |
| 1/1/2010 | $75,901.43 | MAK International |

| | | |
|---|---|---|
| 1/16/2010 | $24,807.02 | MAK International |
| 2/1/2010 | $25,892.78 | MAK International |
| 2/16/2010 | $27,442.31 | MAK International |
| 2/16/2010 | $129,099.63 | MAK International |
| 3/1/2010 | $17,996.13 | MAK International |
| 3/1/2010 | $87,231.39 | MAK International |
| 3/16/2010 | $21,554.99 | MAK International |
| 4/1/2010 | $14,011.25 | MAK International |
| 4/1/2010 | $94,878.09 | MAK International |
| 4/16/2010 | $9,215.22 | MAK International |
| 4/16/2010 | $77,219.07 | MAK International |
| 5/1/2010 | $13,896.38 | MAK International |
| 5/1/2010 | $75,058.09 | MAK International |
| 5/16/2010 | $11,462.31 | MAK International |
| 6/1/2010 | $14,367.30 | MAK International |
| 6/16/2010 | $15,152.85 | MAK International |
| 6/16/2010 | $38,385.09 | MAK International |
| 7/1/2010 | $13,615.87 | MAK International |
| 7/1/2010 | $38,608.20 | MAK International |
| 7/16/2010 | $15,701.18 | MAK International |
| 7/16/2010 | $46,160.08 | MAK International |
| 8/1/2010 | $19,476.10 | MAK International |
| 8/1/2010 | $49,958.54 | MAK International |
| 8/16/2010 | $33,725.52 | MAK International |
| 9/1/2010 | $22,625.41 | MAK International |
| 9/16/2010 | $20,431.73 | MAK International |

| | | |
|---|---|---|
| 10/1/2010 | $19,380.95 | MAK International |
| 10/16/2010 | $34,078.11 | MAK International |
| 11/1/2010 | $20,542.04 | MAK International |
| 11/16/2010 | $18,356.70 | MAK International |
| 1/1/2011 | $22,286.52 | MAK International |
| 1/11/2011 | $14,210.51 | MAK International |
| 1/16/2011 | $16,942.60 | MAK International |
| 1/16/2011 | $27,578.60 | MAK International |
| 2/16/2011 | $12,752.54 | MAK International |
| 2/16/2011 | $31,479.07 | MAK International |
| 3/1/2011 | $13,789.36 | MAK International |
| 3/16/2011 | $15,629.67 | MAK International |
| 4/1/2011 | $36,355.87 | MAK International |
| 4/16/2011 | $31,533.19 | MAK International |
| 5/16/2011 | $13,443.71 | MAK International |
| 5/16/2011 | $30,259.71 | MAK International |
| 6/1/2011 | $17,341.46 | MAK International |
| 6/16/2011 | $16,932.64 | MAK International |
| 7/1/2011 | $12,419.52 | MAK International |
| 7/16/2011 | $10,528.96 | MAK International |
| 7/16/2011 | $25,985.05 | MAK International |
| 8/1/2011 | $11,429.99 | MAK International |
| 8/1/2011 | $30,477.33 | MAK International |
| 8/16/2011 | $10,515.64 | MAK International |
| 9/1/2011 | $10,159.25 | MAK International |
| 9/16/2011 | $11,220.78 | MAK International |

| | | |
|---|---|---|
| 10/1/2011 | $31,793.19 | MAK International |
| 10/16/2011 | $9,747.70 | MAK International |
| 11/1/2011 | $7,826.30 | MAK International |
| 11/16/2011 | $8,462.30 | MAK International |
| 12/1/2011 | $6,208.92 | MAK International |
| 12/1/2011 | $16,198.09 | MAK International |
| 12/16/2011 | $20,731.47 | MAK International |
| 1/1/2012 | $6,304.55 | MAK International |
| 1/16/2012 | $8,513.28 | MAK International |
| 2/1/2012 | $27,469.35 | MAK International |
| 2/16/2012 | $22,973.05 | MAK International |
| 3/1/2012 | $8,176.66 | MAK International |
| 3/16/2012 | $7,405.04 | MAK International |
| 3/16/2012 | $26,358.44 | MAK International |
| 4/1/2012 | $7,873.35 | MAK International |
| 4/1/2012 | $25,167.51 | MAK International |
| 4/16/2012 | $5,925.93 | MAK International |
| 5/1/2012 | $7,615.24 | MAK International |
| 5/16/2012 | $6,222.07 | MAK International |
| 5/16/2012 | $17,455.83 | MAK International |
| 6/1/2012 | $5,879.74 | MAK International |
| 6/1/2012 | $17,339.09 | MAK International |
| 6/16/2012 | $6,846.98 | MAK International |
| 6/16/2012 | $20,506.39 | MAK International |
| 7/1/2012 | $5,469.00 | MAK International |
| 7/1/2012 | $16,339.10 | MAK International |

| | | |
|---|---|---|
| 7/16/2012 | $14,337.76 | MAK International |
| 8/1/2012 | $20,601.77 | MAK International |
| 8/16/2012 | $17,791.44 | MAK International |
| 9/1/2012 | $5,225.95 | MAK International |
| 11/16/2012 | $8,594.70 | MAK International |
| 12/1/2012 | $12,850.56 | MAK International |
| 12/16/2012 | $8,646.99 | MAK International |
| 12/16/2012 | $16,327.86 | MAK International |
| 1/1/2013 | $4,882.71 | MAK International |
| 1/1/2013 | $16,798.51 | MAK International |
| 2/16/2013 | $4,857.75 | MAK International |
| 2/16/2013 | $16,382.11 | MAK International |
| 3/1/2013 | $4,664.62 | MAK International |
| 3/1/2013 | $16,215.53 | MAK International |
| 5/1/2013 | $4,963.21 | MAK International |
| 5/1/2013 | $16,175.20 | MAK International |
| 5/16/2013 | $3,306.12 | MAK International |
| 5/16/2013 | $15,039.00 | MAK International |
| 6/1/2013 | $4,242.93 | MAK International |
| 6/16/2013 | $12,722.28 | MAK International |
| 7/1/2013 | $3,466.02 | MAK International |
| 7/16/2013 | $16,327.10 | MAK International |
| 8/1/2013 | $17,494.63 | MAK International |
| 9/1/2013 | $5,588.23 | MAK International |
| 9/1/2013 | $18,413.35 | MAK International |
| 9/16/2013 | $4,292.83 | MAK International |

| 10/1/2013 | $13,599.89 | MAK International |
|---|---|---|
| 10/16/2013 | $11,807.27 | MAK International |
| 11/1/2013 | $3,223.84 | MAK International |
| 11/16/2013 | $3,353.35 | MAK International |
| 12/1/2013 | $3,789.60 | MAK International |
| 12/1/2013 | $15,287.58 | MAK International |
| 12/16/2013 | $3,649.61 | MAK International |
| 12/16/2013 | $10,402.57 | MAK International |

To Barclay's Private Clients International Ltd. in the United Kingdom:

| Payment Date (on or about) | Amount | Account Name |
|---|---|---|
| 1/16/2007 | $71,709.64 | MUSTAFA ARIF |
| 2/1/2007 | $61,180.99 | MUSTAFA ARIF |
| 2/16/2007 | $61,184.46 | MUSTAFA ARIF |
| 3/1/2007 | $59,256.65 | MUSTAFA ARIF |
| 5/1/2007 | $94,394.85 | MUSTAFA ARIF |
| 5/16/2007 | $87,347.83 | MUSTAFA ARIF |
| 6/1/2007 | $84,739.83 | MUSTAFA ARIF |
| 6/16/2007 | $69,907.80 | MUSTAFA ARIF |
| 8/16/2007 | $72,020.75 | MUSTAFA ARIF |
| 9/1/2007 | $66,065.17 | MUSTAFA ARIF |
| 11/1/2007 | $70,035.68 | MUSTAFA ARIF |
| 11/16/2007 | $14,871.46 | MUSTAFA ARIF |
| 11/16/2007 | $45,045.97 | MUSTAFA ARIF |

| | | |
|---|---|---|
| 12/1/2007 | $10,433.41 | MUSTAFA ARIF |
| 12/1/2007 | $35,781.53 | MUSTAFA ARIF |
| 12/16/2007 | $9,041.21 | MUSTAFA ARIF |
| 12/16/2007 | $49,907.23 | MUSTAFA ARIF |
| 1/1/2008 | $10,268.88 | MUSTAFA ARIF |
| 1/1/2008 | $55,489.16 | MUSTAFA ARIF |
| 1/16/2008 | $12,275.36 | MUSTAFA ARIF |
| 2/16/2008 | $9,458.20 | MUSTAFA ARIF |
| 2/16/2008 | $74,954.14 | MUSTAFA ARIF |
| 3/1/2008 | $9,565.60 | MUSTAFA ARIF |
| 3/1/2008 | $70,574.46 | MUSTAFA ARIF |
| 3/16/2008 | $8,880.67 | MUSTAFA ARIF |
| 3/16/2008 | $70,935.77 | MUSTAFA ARIF |
| 4/1/2008 | $12,336.13 | MUSTAFA ARIF |
| 4/1/2008 | $83,306.75 | MUSTAFA ARIF |
| 4/16/2008 | $94,190.82 | MUSTAFA ARIF |
| 5/1/2008 | $88,710.58 | MUSTAFA ARIF |
| 5/16/2008 | $94,883.59 | MUSTAFA ARIF |
| 6/1/2008 | $101,534.65 | MUSTAFA ARIF |
| 6/16/2008 | $88,935.97 | MUSTAFA ARIF |
| 7/1/2008 | $77,235.44 | MUSTAFA ARIF |
| 7/16/2008 | $81,178.82 | MUSTAFA ARIF |
| 8/1/2008 | $85,449.54 | MUSTAFA ARIF |
| 8/16/2008 | $73,636.82 | MUSTAFA ARIF |
| 9/1/2008 | $69,774.96 | MUSTAFA ARIF |
| 11/16/2008 | $31,186.92 | MAK International |

| | | |
|---|---|---|
| 11/16/087 | $46,703.09 | MAK International |
| 12/1/2008 | $20,465.20 | MUSTAFA ARIF |
| 12/1/2008 | $37,416.16 | MUSTAFA ARIF |
| 5/1/2009 | $32,165.70 | MUSTAFA ARIF |
| 5/1/2009 | $42,359.60 | MUSTAFA ARIF |
| 5/16/2009 | $32,120.35 | MUSTAFA ARIF |
| 5/16/2009 | $38,819.84 | MUSTAFA ARIF |
| 6/1/2009 | $36,846.07 | MUSTAFA ARIF |
| 6/1/2009 | $41,330.03 | MUSTAFA ARIF |
| 6/16/2009 | $39,571.25 | MUSTAFA ARIF |
| 6/16/2009 | $40,863.63 | MUSTAFA ARIF |
| 7/1/2009 | $62,189.57 | MUSTAFA ARIF |
| 7/16/2009 | $81,313.60 | MUSTAFA ARIF |
| 8/1/2009 | $80,876.72 | MUSTAFA ARIF |
| 8/16/2009 | $84,200.29 | MUSTAFA ARIF |
| 9/16/2009 | $22,964.98 | MUSTAFA ARIF |
| 10/1/2009 | $29,287.49 | MUSTAFA ARIF |
| 10/16/2009 | $93,969.06 | MUSTAFA ARIF |
| 11/16/2009 | $92,936.50 | MUSTAFA ARIF |
| 12/16/2009 | $117,542.62 | MUSTAFA ARIF |
| 1/16/2010 | $122,031.27 | MUSTAFA ARIF |
| 2/1/2010 | $94,057.07 | MUSTAFA ARIF |
| 3/16/2010 | $118,691.00 | MUSTAFA ARIF |
| 5/16/2010 | $53,117.37 | MUSTAFA ARIF |
| 6/1/2010 | $40,852.32 | MUSTAFA ARIF |
| 8/16/2010 | $14,728.00 | MUSTAFA ARIF |

| | | |
|---|---|---|
| 9/1/2010 | $47,419.51 | MUSTAFA ARIF |
| 9/16/2010 | $44,029.40 | MUSTAFA ARIF |
| 10/1/2010 | $34,482.09 | MUSTAFA ARIF |
| 10/16/2010 | $17,100.76 | MUSTAFA ARIF |
| 11/1/2010 | $32,844.29 | MUSTAFA ARIF |
| 11/16/2010 | $25,717.48 | MUSTAFA ARIF |
| 12/1/2010 | $16,687.71 | MUSTAFA ARIF |
| 12/1/2010 | $18,716.29 | MUSTAFA ARIF |
| 12/16/2010 | $11,843.01 | MUSTAFA ARIF |
| 12/16/2010 | $26,332.17 | MUSTAFA ARIF |
| 2/1/2011 | $17,459.07 | MUSTAFA ARIF |
| 2/1/2011 | $33,817.29 | MUSTAFA ARIF |
| 3/1/2011 | $24,693.93 | MUSTAFA ARIF |
| 3/16/2011 | $32,626.29 | MUSTAFA ARIF |
| 4/1/2011 | $14,031.06 | MUSTAFA ARIF |
| 4/16/2011 | $12,699.00 | MUSTAFA ARIF |
| 5/1/2011 | $14,174.58 | MUSTAFA ARIF |
| 5/1/2011 | $34,602.57 | MUSTAFA ARIF |
| 6/1/2011 | $37,083.57 | MUSTAFA ARIF |
| 6/16/2011 | $29,887.71 | MUSTAFA ARIF |
| 7/1/2011 | $28,116.79 | MUSTAFA ARIF |
| 8/16/2011 | $30,058.19 | MUSTAFA ARIF |
| 9/1/2011 | $25,672.11 | MUSTAFA ARIF |
| 9/16/2011 | $28,382.85 | MUSTAFA ARIF |
| 10/1/2011 | $9,256.88 | MUSTAFA ARIF |
| 10/16/2011 | $25,621.32 | MUSTAFA ARIF |

| 11/1/2011 | $27,429.01 | MUSTAFA ARIF |
| 11/16/2011 | $20,076.57 | MUSTAFA ARIF |
| 12/16/2011 | $7,631.62 | MUSTAFA ARIF |
| 1/1/2012 | $17,912.07 | MUSTAFA ARIF |
| 1/16/2012 | $30,524.75 | MUSTAFA ARIF |
| 2/1/2012 | $7,462.01 | MUSTAFA ARIF |
| 2/16/2012 | $6,548.11 | MUSTAFA ARIF |
| 3/1/2012 | $21,612.12 | MUSTAFA ARIF |
| 4/16/2012 | $18,028.81 | MUSTAFA ARIF |
| 5/1/2012 | $18,880.21 | MUSTAFA ARIF |

To National West Bank PLC in the United Kingdom:

| Payment Date (on or about) | Amount | Account Name |
| --- | --- | --- |
| 7/16/2012 | $6,418.40 | MUSTAFA ARIF |
| 8/1/2012 | $3,834.10 | MUSTAFA ARIF |
| 8/16/2012 | $4,767.51 | MUSTAFA ARIF |
| 9/16/2012 | $4,450.21 | MUSTAFA ARIF |
| 9/16/2012 | $10,398.44 | MUSTAFA ARIF |
| 10/1/2012 | $22,302.87 | MUSTAFA ARIF |
| 10/16/2012 | $12,148.25 | MUSTAFA ARIF |
| 11/1/2012 | $5,625.30 | MUSTAFA ARIF |
| 11/1/2012 | $5,945.99 | MUSTAFA ARIF |
| 1/16/2013 | $5,049.89 | MUSTAFA ARIF |
| 1/16/2013 | $16,478.54 | MUSTAFA ARIF |
| 2/1/2013 | $6,147.71 | MUSTAFA ARIF |

| 2/1/2013 | $18,250.86 | MUSTAFA ARIF |
|---|---|---|
| 3/16/2013 | $5,676.76 | MUSTAFA ARIF |
| 3/16/2013 | $16,191.84 | MUSTAFA ARIF |
| 4/1/2013 | $4,567.71 | MUSTAFA ARIF |
| 4/1/2013 | $16,106.14 | MUSTAFA ARIF |
| 4/16/2013 | $4,743.94 | MUSTAFA ARIF |
| 4/16/2013 | $19,189.95 | MUSTAFA ARIF |
| 6/1/2013 | $14,188.16 | MUSTAFA ARIF |
| 6/16/2013 | $4,459.68 | MUSTAFA ARIF |
| 7/1/2013 | $12,958.97 | MUSTAFA ARIF |
| 7/16/2013 | $2,447.77 | MUSTAFA ARIF |
| 8/1/2013 | $4,021.83 | MUSTAFA ARIF |

All in violation of Title 18, United States Code, Sections 2 and 1343.

<u>COUNTS TWO THROUGH FOUR</u>

(21 U.S.C. §§ 331(a), 333(a)(2), 352(a), and 353(b)(1) and 18 U.S.C. § 2:
Shipment of Misbranded Drugs in Interstate Commerce and Aiding and Abetting the Shipment
of Misbranded Drug in Interstate Commerce)

28. Paragraphs 1 through 24 of the General Allegations are incorporated by reference as

though re-alleged in their entirety herein.

29. Arif created and maintained the websites Anemia-tab.net, Alzhotin.com, and

Semtical.com, which offered for sale the drugs Anemia Tab for the treatment of several

types of anemia, Alzhotin for the treatment of Alzheimer's disease, and Semtical for the

treatment of inclusion body myositis, respectively.  These websites were directed to

potential purchasers of the drugs and included false information relating to the efficacy of

the drugs, a list of the ingredients of the drugs, information about side effects, and other

information pertinent to the use of the drugs.  Visitors to the websites could purchase the

drugs through links on the websites to the shopping cart services provided by CCNow on

behalf of Arif.

30. These websites constituted "labeling" for the drugs under Title 21, United States Code,

Section 321(m).

31. The drugs Anemia Tab, Alzhotin, and Semtical were prescription drugs within the

meaning of Title 21, United States Code, Section 353(b)(1)(A).

32. On or about the dates listed below, in the District of New Hampshire and elsewhere, the

defendant ARIF, with intent to defraud and mislead, did introduce and deliver, and cause

to be introduced and delivered, for introduction into interstate commerce drugs that were

misbranded within the meaning of Title 21, United States Code, Section 352(a) in that

22

their labeling was false and misleading and within the meaning of Title 21, United States

Code, Section 353(b)(1) in that they were prescription drugs that were dispensed without

the prescription of a licensed medical practitioner, as charged in the individual counts

below:

| COUNT | DATE: in or about | INTRODUCTION INTO INTERSTATE COMMERCE |
|-------|-------------------|----------------------------------------|
| 2 | May 2010 | Shipment of Anemia Tab from Lahore, Pakistan, to New Hampshire |
| 3 | August 2010 | Shipment of Alzhotin from Lahore, Pakistan, to New Hampshire |
| 4 | March 2011 | Shipment of Semtical Herbal pills from Lahore, Pakistan, to New Hampshire |

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2) and Title

18, United States Code, Section 2.

<u>COUNT FIVE</u>

(21 U.S.C. §§ 331(a), 333(a)(2), and 352(a) and 18 U.S.C. § 2:
Shipment of Misbranded Drugs in Interstate Commerce and Aiding and Abetting the Shipment
of Misbranded Drug in Interstate Commerce)

33. Paragraphs 1 through 24 of the General Allegations are incorporated by reference as

though re-alleged in their entirety herein.

34. Arif created and maintained the website Preleton.com, which offered for sale the drug

Preleton for the treatment of Prickly Heat.  This website was directed to potential

purchasers of the drug and included false information relating to the efficacy of the drug,

a list of the ingredients of the drug, information about side effects, and other information

pertinent to the use of the drug.  Visitors to the websites could purchase the drug through

links on the websites to the shopping cart services provided by CCNow on behalf of Arif.

35. This website constituted "labeling" for the drug Preleton under Title 21, United States

Code, Section 321(m).

36. In or about August 2010, in the District of New Hampshire and elsewhere, the defendant

ARIF, with intent to defraud and mislead, did introduce and deliver, and cause to be

introduced and delivered, for introduction into interstate commerce from Lahore Pakistan

to New Hampshire the drug Preleton that was misbranded within the meaning of Title 21,

United States Code, Section 352(a) in that its labeling was false and misleading,

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2) and Title

18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE

### A.  FORFEITABLE PROPERTY

The allegations of Count One of this Superseding Indictment are hereby re-alleged as if fully set forth herein and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.  Upon conviction of the offense alleged in Count One of this Superseding Indictment, the defendant shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of said violation of 18 U.S.C. § 1343.

### B.  MONEY JUDGMENT

A sum of money equivalent to $12,885,148.76, the amount of proceeds obtained as a result of the charged violation of 18 U.S.C. § 1343.

### C.  SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described above.

All in accordance with Title 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461, and Rule

32.2(a), Federal Rules of Criminal Procedure.

September 9, 2015

                                           TRUE BILL

                                           /s/ Foreperson
                                           Grand Jury Foreperson


        Donald Feith
        Acting United States Attorney

  By:  /s/ Arnold H. Huftalen
        Arnold H. Huftalen
        Assistant U. S. Attorney
        District of New Hampshire

        /s/ Sarah Hawkins
        Sarah Hawkins
        Senior Counsel
        Office of Chief Counsel
        U.S. Food and Drug Administration