```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                      Criminal No. 15-cr-57-LM
                                          Opinion No. 2016 DNH 179

Mustafa Hassan Arif

**O R D E R**

The government has charged defendant, Mustafa Arif, with wire fraud in violation of 18 U.S.C. § 1343 (Count I) and four counts of introducing misbranded drugs into interstate commerce in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 352(a) (Counts II – V) ("misbranding of drugs"). The charges arise from alleged misrepresentations Arif made on his websites offering various drugs for sale.

Arif has filed two motions pursuant to Federal Rule of Criminal Procedure 12(b)(1), requesting that the court determine that two defenses he intends to offer at trial are viable. See doc. nos. 113 & 114. The government objects to both motions.

**Background**

The parties have agreed to 19 separate, detailed factual stipulations. See doc. no. 94. As the court summarized these facts in its September 16, 2016 order, see doc. no. 108, the court will refer to them in this order only where relevant.

To prove that Arif committed wire fraud, the government must prove that he participated in a scheme to defraud with the intent to defraud.  To prove that Arif introduced misbranded drugs into interstate commerce, the government must prove that he acted with the intent to defraud or mislead.[1]

In his trial briefs, Arif stated that he intended to offer at trial a defense that he had a good faith belief in the efficacy of the drugs sold on his websites and, therefore, could not have had an intent to defraud for purposes of any of the charges ("good faith defense").[2]  Arif proposed a hybrid approach to his defense: counsel would represent Arif on the entirety of his case with the exception of his good faith defense, and, on that defense, Arif would represent himself.

After a hearing on Arif's request for hybrid counsel, Arif requested that the court decide the issue of the viability of

---

[1] Although the government may charge a defendant with introducing misbranded drugs into interstate commerce ("misbranding of drugs") as a misdemeanor, see 21 U.S.C. §§ 331(a) and 333(a)(1), the government has charged Arif with felony misbranding of drugs under 21 U.S.C. §§ 331(a) and 333(a)(2).  Such a charge requires the government to prove that Arif committed the offense with the intent to defraud or mislead.

[2] The court has summarized the unique procedural history of this case in two prior orders.  See doc. nos. 108 & 112.  The court repeats in this order only that portion of the procedural history necessary for an understanding of the two pending motions.

his good faith defense as a matter of law prior to trial.  In an order dated September 16, 2016, the court held that Arif's proposed good faith defense is not a viable defense to the "intent to defraud" element of the pending wire fraud and misbranding of drugs charges.  See doc. no. 108.

At a hearing on that same date, the parties disclosed that the ruling had generated discussions about a conditional plea agreement.  Arif informed the court that he intended to plead guilty to the wire fraud charge if he could retain his right to appeal two legal issues.[3]  The two legal issues, briefly summarized, are: (1) whether Arif's proposed good faith defense is a viable defense to the "intent to defraud" element of the pending wire fraud and misbranding of drugs charges (the issue addressed in the court's September 16 order); and (2) whether the government would be precluded from prosecuting the wire fraud charge in the event the government failed at trial to prove certain alleged facts with respect to the misbranding of drugs charges (i.e., that the representations about the drugs constitute labeling as opposed to advertising) (the "jurisdictional defense").

---

[3] Federal Rule of Criminal Procedure 11(a)(2) allows a defendant to enter a conditional plea of guilty, "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."

There were two impediments to Arif's ability to enter into a plea and reserve his right to challenge the court's rulings on the two issues. First, the court had not issued an order or expressed any view, adverse to Arif or otherwise, on his jurisdictional defense. Second, although the court decided the first legal issue adversely to Arif, see doc. no. 108, that issue did not come before the court by way of "a specified pretrial motion" as required in Rule 11(a)(2). See doc. no. 108 (explaining the case's unique procedural history).

To resolve these procedural snags, the parties proposed that they place both issues before the court in a manner that would allow the court to rule, as required by Rule 11(a)(2), on "a specified pretrial motion." The court agreed to continue the trial for a short time (until October 11, 2016), to enable the parties to file their motions and objections, and allow the court to rule on the motions prior to the start of trial.

Arif has now filed two specified pretrial motions, pursuant to Federal Rule of Criminal Procedure 12(b)(1). The first is a "motion for pre-trial ruling regarding jurisdiction" (doc. no. 113). The second is "defendant's pro se motion for pretrial ruling – intent" (doc. no. 114). The government objects to both motions.

**Discussion**

Rule 12(b)(1) provides: "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The parties agree that the court can determine the viability of Arif's jurisdictional defense and his good faith defense without a trial on the merits.

I.   Jurisdictional Defense

Counts II through V of the superseding indictment charge Arif with misbranding of drugs with the intent to defraud or mislead in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).[4] The superseding indictment alleges that the drugs were misbranded under 21 U.S.C. § 352(a) because their labeling, in this case, Arif's statements about the drugs on his websites, was false or misleading. Thus, if the government fails to prove at trial that Arif's statements about the drugs on his websites

---

[4] The government has argued in an earlier filing, see doc. no. 105 at n.4, that an "intent to mislead" is broader than an "intent to defraud." For purposes of this order, the court presumes, without deciding, that the term "intent to mislead" under the misbranding of drugs statute is, for all intents and purposes, identical to an intent to defraud. See United States v. Watkins, 278 F.3d 961, 966-69 (9th Cir. 2002). Therefore, the court will refer to the intent element of the charged offenses as "intent to defraud."

constitute labeling (as opposed to advertising), then Arif would be entitled to a verdict of not guilty on Counts II through V.

Arif's motion (doc. no. 113) asks the court to assume, for purposes of the motion, that the government would fail at trial to prove that Arif's statements about the drugs on his websites constitute labeling, and instead that they constitute merely advertising.  Arif contends that, in such circumstances, the government would be precluded from prosecuting the wire fraud charge (Count I) on the basis of false advertising because the Federal Trade Commission ("FTC") has exclusive jurisdiction over false advertising of drugs.  Arif asserts two arguments to support his theory of preclusion: 1) the Department of Justice cannot criminally charge a defendant with wire fraud based on false advertising because such a charge is preempted by the Federal Trade Commission Act ("FTCA"); and 2) even if the Department of Justice could criminally charge a defendant based on false advertising, it cannot do so unless the FTC certifies the facts necessary for such a charge, which the FTC has not done in this case.  See doc. no. 113 at 7.  The court addresses each of these arguments in turn.[5]

---

[5] In its objection, the government discerns from Arif's motion a third argument: that the FTCA "depriv[es] United States District Courts of jurisdiction over" any matter involving a charge based on false advertising.  Doc. no. 115 at 2.  The court does not read Arif's motion to challenge the court's jurisdiction, but rather to challenge the government's authority

A.   Preemption

Arif first asserts that a charge of wire fraud based on false advertising of drugs is preempted or implicitly repealed by the FTCA.  See doc. no. 113 at 7 ("To allow the Government to charge wire fraud . . . where the allegations of fraud fall squarely within the regulatory jurisdiction of the FTCA, guts the intent of 15 U.S.C. §§ 52-57 and renders it meaningless.").  In so arguing, Arif "march[es] into the teeth of a strong judicial policy disfavoring the implied repeal of statutes." United States v. Brien, 617 F.2d 299, 310 (1st Cir. 1980); Posadas v. Nat'l City Bank of N.Y., 296 U.S. 497, 503 (1936) ("The cardinal rule is that repeals by implication are not favored.").  "For a court to find implied repeal, there must be a positive repugnancy between the two statutes."  Brien, 617 F.2d at 310 (citing United States v. Borden Co., 308 U.S. 188, 198 (1939)).  "When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as

---

to bring criminal charges based on false advertising.  To the extent Arif intended to assert an argument as to the court's jurisdiction over a wire fraud charge, that argument is without merit.  See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States.").

7

effective."  FCC v. NextWave Personal Commc'ns, Inc., 537 U.S. 293, 304 (2003).

Conduct related to false advertising of non-prescription drugs falls within the reach of the FTCA and, therefore, the FTC has jurisdiction to pursue charges based on false advertising. Under Arif's view, because the FTC has the authority to enforce the FTCA, the government cannot bring a charge of wire fraud against Arif based on his allegedly false advertising of non-prescription drugs.  Arif must thus show that there is an "inherent conflict" between the wire fraud statute and the FTCA. Nextwave, 537 U.S. at 304.

Arif offers no support for his contention that the FTCA preempts or implicitly repeals the wire fraud statute.  The First Circuit, although not directly addressing the FTCA, has rejected similar arguments based on implied repeal.  In Brien, defendants convicted of mail and wire fraud challenged their convictions, arguing that the mail and wire fraud statutes were impliedly repealed or preempted by the enactment of more specific provisions of the Commodity Futures Trading Act ("CFTA").  Brien, 617 F.2d at 310.  The First Circuit agreed that Congress gave exclusive jurisdiction over commodities futures regulation to the Commodities Futures Trading Commission, but disagreed that the CFTA preempted or impliedly repealed the mail and wire fraud statutes.  Id.  The court noted

that "[i]t was the fraudulent scheme furthered by use of the mails and interstate telephone calls that brought appellants within the purview of the mail and wire fraud statutes and not the sale of commodity options."  Id.  The court held that since the mail and wire fraud statutes "are federal general antifraud statutes, they cannot be preempted by the CFTA."  Id.  Other courts have reached the same conclusion as to the CFTA.  See United States v. Shareef, 634 F.2d 679, 680-81 (2d Cir. 1980) (mail fraud statute not implicitly repealed by the CFTA with respect to mail fraud involving commodity futures); United States v. Abrahams, 493 F. Supp. 296, 303-04 (S.D.N.Y. 1980) (CFTA does not preempt or implicitly repeal the mail fraud statute).

While the court has been unable to locate precedent precisely on point, there are numerous cases where the government has successfully prosecuted mail and wire fraud charges based on false or misleading advertising without any suggestion that the charges were precluded by virtue of the FTC having exclusive jurisdiction over the subject matter of false advertising.  See United States v. Sloan, 492 F.3d 884 (7th Cir. 2007); United States v. Themy, 624 F.2d 963 (10th Cir. 1980); United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978); United States v. Andreadis, 366 F.2d 423 (2d Cir. 1966); Blanton v. United States, 213 F. 320 (8th Cir. 1914).  Further, courts have

held that the FTCA does not preclude the government from prosecuting a defendant for false advertising under other federal statutes. See United States v. Philip Morris, 263 F. Supp. 2d. 72, 77-78 (D.D.C. 2003) (holding that a federal RICO charge based on false advertising was not preempted by the FTCA, noting "[e]ven though the FTC has exclusive jurisdiction under the FTCA, the statute has never been interpreted to give the agency exclusive jurisdiction over advertising or marketing conduct"); Friedlander v. U.S. Postal Serv., 658 F. Supp. 95, 103 (D.D.C. 1987) ("[T]he existence of [Food and Drug Administration ("FDA")] or FTC jurisdiction over this same matter does not prevent the Postal Service from initiating section 3005 proceedings against companies using the mails in furtherance of a fraudulent scheme.").[6]

Arif has not met the high burden of showing that the FTCA preempts or implicitly repeals the wire fraud statute for charges based on false advertising of non-prescription drugs.

---

[6] Further, there is nothing in the legislative history of the FTCA to suggest that Congress intended the statute to repeal other fraud statutes or serve as the exclusive method by which false advertising could be prosecuted. See S. Rep. No. 74-1705 (1936); S. Rep. No. 75-221 (1937); H.R. Rep. No. 75-1613 (1937); & H.R. Rep. No. 75-1774 (1938).

10

B.   Necessity of FTC Certification

Arif next argues that even if the government can bring wire fraud charges against him based on false advertising, FTC "[c]ertification under 15 U.S.C. § 56(b) is a jurisdictional prerequisite to any prosecution premised on false advertising." Doc. no. 113 at 7.

Section 56(b) provides: "Whenever the Commission has reason to believe that any person . . . is liable for a criminal penalty under this subchapter, the Commission shall certify the facts to the Attorney General, whose duty it shall be to cause appropriate criminal proceedings to be brought." Arif contends that § 56(b) is the exclusive mechanism by which a federal criminal prosecution may be brought for an alleged FTCA violation.

Arif's argument fails for several reasons. First, § 56(b) provides that the FTC may certify facts to the Attorney General when it has reason to believe that a person is criminally liable "under this subchapter." § 56(b) (emphasis added). Such criminal liability under the subchapter refers to 15 U.S.C. § 54, which provides criminal penalties for false advertising, an offense the government has not charged. Thus even if Arif's reading of the FTCA were correct – that FTC certification is necessary before the government can bring criminal charges against a defendant – the plain language of § 56(b) would

11

require FTC certification only before bringing charges under the FTCA. Section 56(b) cannot be read to require FTC certification for the enforcement of criminal penalties for another offense, such as wire fraud, and Arif makes no developed argument that it does.

Regardless, Arif's interpretation of § 56(b) is incorrect. Arif does not cite, and the court is not aware of, any authority for the proposition that certification by the FTC under § 56(b) is a jurisdictional prerequisite for criminal prosecution. Indeed, in United States v. St. Regis Paper Co., 355 F.2d 688 (2d Cir. 1966), the Second Circuit addressed the issue of FTC certification to the Attorney General. The court held that FTC certification was a "jurisdictional prerequisite" for actions seeking civil penalties for violations of cease-and-desist orders. See id. at 698. The court noted, however, that the legislative history of the statute made clear "that the Attorney General could prosecute violations of that section on his own motion, without awaiting FTC certification." Id. at 692-93 (emphasis added). The court quoted Congressman Lea, the co-sponsor of the Wheeler-Lea Act, which amended the FTCA to give the FTC authority over false advertising, as stating:

> As to the man who advertises an article injurious to health or advertises with intent to defraud or mislead, the provisions of the bill * * * authorize an immediate prosecution of such a man regardless of what

12

> the Federal Trade Commission does.  He can be arrested
> and prosecuted immediately.

Id. at 692 n.7 (quoting 83 Cong. Rec. 406 (1938)).

Therefore, Arif's argument as to the necessity of FTC certification before the government can prosecute a defendant for false advertising is based on a misunderstanding of the FTCA.  Section 56(b) is not a jurisdictional prerequisite to criminal prosecution.  Even if it were, such a prerequisite could only apply to criminal prosecutions brought under the FTCA, and would not apply to other statutes.

For the above reasons, the court holds that, assuming the government would be unable to prove at trial that Arif's websites constituted "labeling" for purposes of the misbranding of drugs charges, it would not be precluded from pursuing charges against Arif under the wire fraud statute.  Accordingly, Arif's motion regarding his jurisdictional defense (doc. no. 113) is denied.

## II.  Good Faith Defense

As discussed above, the court issued an order on September 16, 2016, holding that Arif's proposed good faith defense was not a viable defense to the "intent to defraud" element of the pending wire fraud and misbranding of drugs charges.  See doc. no. 108.  To meet the requirements of Rule 11(a)(2), Arif filed a "pro se motion for pretrial ruling – intent."  See doc. no.

13

114.[7]  In his most recent motion, Arif asserts two new legal arguments in support of his lack of intent to defraud: (A) Arif's business was aimed at inducing purchase from only knowing and willing buyers of non-FDA-approved herbal and homeopathic remedies; and (B) Arif had no intent to harm his customers. Doc. no. 114 at 1. The court addresses each argument below.

### A.   Purchasers of Non-FDA-Approved Products

Arif argues:

> since his websites were aimed at selling only to a limited circle of knowing and willing buyers and importers of non-FDA approved herbal and homeopathic medicine and any statements on the websites did and could only induce purchases from such buyers, therefore he could not have had the requisite specific intent to defraud. Knowing and willing buyers and importers of non-FDA approved medicine are not defrauded even if such a medicine fails to meet their expectations in some manner.

Doc. no. 114 at 3.  Arif appears to be arguing that it is impossible for a seller of non-FDA-approved products to have an intent to defraud customers who purchase such products with the knowledge that they are not FDA-approved, regardless of any

---

[7] In this motion, Arif reasserts the same argument he made in earlier briefs, i.e., his good faith belief in the efficacy of the drugs negates his intent to defraud.  The court has previously determined that, assuming Arif had a personal, good faith belief in the efficacy of the drugs sold on his websites, that good faith belief is not a viable defense to the charges in the superseding indictment.  See doc. no. 108.  The court incorporates its analysis in document no. 108 into this order.

misrepresentations.[8]  Arif cites United States v. Vitek Supply Corp., 144 F.3d 476 (7th Cir. 1998) and United States v. Andersen, 45 F.3d 217 (7th Cir. 1995) in support of his argument.  Neither case helps Arif's cause.

In Vitek, the defendants sold premixes, which contained non-FDA-approved drugs, to be added to feed for veal calves. The defendants smuggled the drugs into the United States by either misdescribing the drugs in documents submitted to United States Customs or failing to declare the drugs altogether.  The defendants were charged with and convicted of, among other things, misbranding of drugs.

Arif quotes the following language from Vitek: "[D]irect customers were aware that the premixes contained unapproved drugs.  Therefore, as the government concedes, these customers were not defrauded."  Doc. no. 114 at 2 (quoting Vitek, 144 F.3d at 491).  Arif construes that language as standing for the sweeping proposition that a seller of non-FDA-approved drugs cannot legally defraud any customers who knowingly purchase non-FDA-approved drugs.

Arif's reliance on Vitek is misplaced.  First, the language quoted by Arif is taken out of context; the language concerns

---

[8] For purposes of this order, the court assumes that Arif intended to induce the purchase of his drugs by only knowing and willing buyers of non-FDA-approved drugs.

15

the court's calculation of loss under the United States Sentencing Guidelines. The court's analysis did not concern the defendants' guilt or innocence, and did not bear on the defendants' intent to defraud.

Second, the defendants in Vitek were charged with misbranding of drugs based on their misrepresentations concerning the content of the drugs. Therefore, the fact that the government conceded that the defendants' customers knew the true content of the drugs was relevant to whether the customers sustained any loss from the misrepresentations. Here, however, the government has charged Arif with misbranding of drugs based on Arif's allegedly false statements on his websites concerning cure rates and efficacy, customer testimonials, and research papers. None of Arif's alleged misrepresentations pertains to FDA approval. The fact that Arif's customers may have known the drugs were non-FDA-approved does not bear on the question of whether Arif intended to defraud his customers by making misrepresentations about the efficacy of the drugs, customer testimonials, or research conducted on the drugs.

Arif's reliance on Andersen is also misplaced. In Andersen, the defendants manufactured and sold animal drugs which had not been approved by the FDA. They pled guilty to failing to register a drug manufacturing facility with the FDA with intent to defraud or mislead in violation of 21 U.S.C.

16

331(p) and 333(a)(2). Andersen, 45 F.3d at 219. Arif asserts that Andersen holds "that there was no quantifiable loss where consumers were very pleased with defendant's product, even though defendant sold said product without FDA approval and made false statements to consumers about the product." Doc. no. 114 at 3.

Andersen's holding is not relevant to Arif's argument. First, as in Vitek, the Andersen court analyzed the issue in the context of calculating loss under the Sentencing Guidelines. The analysis had no bearing on the defendants' guilt or innocence as to the charged offense or whether they had an intent to defraud. Second, in Andersen, the government charged that the defendants intended to defraud the FDA, rather than their customers. Id. at 219, 222. Here, Arif's alleged fraudulent statements on his websites were directed at his customers, not the FDA or any government agency.

Nothing in Vitek or Andersen suggests that a defendant who misleads customers by making misrepresentations to induce the customers to purchase his products, as the government alleges in the superseding indictment, nevertheless acts without intent to defraud or mislead as long as he is truthful about a lack of FDA-approval. Under Arif's theory, a seller of a non-FDA-approved drug could make any misrepresentation, so long as he

17

did not state that the drug was FDA-approved. No such immunity exists.

In sum, assuming that Arif intended to induce the purchase of his drugs by only knowing and willing buyers of non-FDA-approved drugs, for the above reasons, the court finds that that fact is not a defense to the charges in the superseding indictment.

### B.   Good Faith

With regard to Arif's good faith argument, the court addresses one additional argument not directly discussed in its earlier order but pressed by Arif in his current motion. That is, Arif now argues that for the government to prove Arif acted with the intent to defraud, "there is a pressing need to independently establish an 'intent to harm' from an 'intent to deceive.'" Doc. no. 114 at 4.

Arif is incorrect. Arif's intent to defraud does not turn on whether he intended to harm his customers. See United States v. DeNunzio, Cr. No. 14-10284-NMG, 2015 WL 5305226, at *4 (D. Mass. Sept. 19, 2015) (differentiating between an intent to harm and an intent to defraud for purposes of wire fraud, and holding that the former is not an element of the offense) (citing United States v. Kendrick, 221 F.3d 19, 29 (1st Cir. 2000) (en banc) and collecting cases)); see also United States v. Appolon, 715

F.3d 362, 368 (1st Cir. 2013); United States v. Mueffelman, 470 F.3d 33, 36 (1st Cir. 2006) (noting that defendant had an intent to defraud for purposes of mail fraud even though "he optimistically believed that his programs would succeed"). Arif's intent to defraud turns on whether he intended to deceive another in order to obtain money or property. See United States v. Pimentel, 380 F.3d 575, 585 (1st Cir. 2004).

In short, for the reasons stated above and in the court's September 16, 2016 order, the good faith defense, as argued by Arif in his briefs before the court, is not a viable defense to the charges in the superseding indictment.

**Conclusion**

For the foregoing reasons, Arif's "motion for pretrial order – jurisdiction" (doc. no. 113) and "pro se motion for pretrial order – intent" (doc. no. 114) are denied.[9]

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 6, 2016

---

[9] The court made clear at the September 16, 2016 hearing that, in the event this case proceeds to trial, nothing in any of Arif's pro se briefs shall be used against him at trial, even for impeachment purposes.

```
cc:   Kirsten B. Wilson, Esq.
      Robin D. Melone, Esq.
      Arnold H. Huftalen, Esq.
      Sarah E. Hawkins, Esq.
      U.S. Probation
      U.S. Marshal
```